IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| JENNIFER S.,[1] § § § Plaintiff, § § v. § Civil Action No. 1:21-CV-00230-H-BU § COMMISSIONER, SOCIAL § SECURITY ADMINISTRATION, § § Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jennifer S. seeks judicial review of a final adverse decision of the Commissioner of Social Security (Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 2. United States District Judge Wesley Hendrix referred this case to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Dkt. No. 1. Because only the Plaintiff has consented to proceed before a magistrate judge, the undersigned submits these Findings, Conclusions, and Recommendation. *See* Dkt. No. 9.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

1

I.   BACKGROUND

Plaintiff alleges that her disability began on November 1, 2018. *See* Administrative Record, Dkt. No. 15-1 (Tr.) 17. Plaintiff initially filed application under Title II for both a period of disability and disability insurance benefits. Tr. at 17. Her application was denied initially on November 1, 2018, and then again upon reconsideration on January 9, 2020. Tr. at 17. Plaintiff then requested a hearing in front of an Administrative Law Judge (ALJ). Tr. at 17. Due to COVID-19, the ALJ held a telephonic hearing on October 29, 2020. Tr. at 17. Plaintiff chose to "appear and testify without the assistance of an attorney or other representative." Tr. at 17.

At the time of the hearing, Plaintiff was 44 years old. Tr. at 30. Plaintiff has at least a high school education. Tr. at 30. Her past work experience is as a waitress, fast-food worker, recreational vehicle park clerk, and insurance clerk, and did not amount to substantial gainful activity. Tr. at 29.

The ALJ found that Plaintiff was not disabled and consequently not entitled to disability benefits. Tr. at 31. At step one of the analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2018. Tr. at 19. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, lumbar strain, hypothyroid disease with nodules, anxiety, depression, and post-traumatic stress disorder. Tr. at 20. At step three, the ALJ determined that none of the impairments or combination

---

[2] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

of impairments met or equaled the severity of one of the impairments listed in the Social Security regulations. Tr. at 21.

Also at step three, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to pulmonary irritants such as gases, odors, and fumes. She must work indoors in a climate controlled environment to avoid extreme temperatures of cold or heat and humidity. She must have no exposure to very loud noises as defined in the SCO (such as jackhammers). Mentally, she can understand, remember and carry out simple and routine instructions and tasks. She can occasionally adapt to changes in the work setting or work processes. She must avoid work where job performance is based on a strict quota requirement. She can occasionally interact with the coworkers and supervisors. Tr. at 24.

At step four, the ALJ concluded that Plaintiff was unable to perform any of her past work. Tr. at 30.

Finally, at step five, the ALJ considered Plaintiff's age, education, past work experience, and residual functional capacity (RFC), in conjunction with the testimony of a VE in finding that work existed in the national economy that Plaintiff could perform. Tr. at 31. The VE testified that Plaintiff could perform the jobs of office helper, mail clerk, and machine tender. Tr. at 31. As a result, the ALJ found that work exists in the national economy that Plaintiff can perform, and Plaintiff did not have a disability as defined in the Social Security Act. Tr. at 31.

Plaintiff appealed the ALJ's decision to the Appeals Council. Dkt. No. 8 at 5. The Council affirmed the ALJ's decision. *Id.* Plaintiff then timely filed this action in federal district court.

## II.      LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S.C § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520 (2017); *see also Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies their initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.   DISCUSSION

Plaintiff is proceeding *in forma pauperis* (IFP) and without representation. *See* Dkt. No. 6. After multiple Orders requiring Plaintiff to file an opening brief and granting her additional time to comply, Plaintiff filed a handwritten document discussing her current

impairments. *See* Dkt. Nos. 16, 17, 19, 21. The Court determined that supplemental briefing was required because Plaintiff's briefing only emphasized the severity of her impairments and why she believes based on her limitations that disability income is her "right to have." *See* Dkt. Nos. 21, 23. The Court sent an Order for Supplemental Briefing through a Magistrate Judge's Second Questionnaire, ordering Plaintiff to answer questions about the ALJ's decision. Dkt. No. 22. The Plaintiff complied (Dkt. No. 23), and the Commissioner filed a timely Response, Dkt. No. 24.

Based on Plaintiff's briefing (Dkt. Nos. 21, 23, 25), she argues that the entirety of the ALJ's RFC is not supported by substantial evidence. The Court now discusses each of Plaintiff's arguments that evidence does not support the RFC.

A. The ALJ's decision was supported by substantial evidence.

As stated above, "[s]ubstantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris*, 209 F.3d at 417. A finding of no substantial evidence is only appropriate "if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting *Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988)). The ALJ supported his RFC findings for Plaintiff's physical and emotional limitations through the opinions of medical professionals, Plaintiff's testimony, and physical reports.

1. *Physical Limitations*

With regard to the ALJ's physical RFC determinations, the ALJ found that Plaintiff can perform light work but can never climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. at 29.

Plaintiff argues that each of these findings was not supported by substantial evidence. *See generally* Dkt. No. 24.

Plaintiff claims that she cannot perform light work. *Id.* at 3. She states that her "mental illness affect[s] [her] daily life 24/7," she does not make good decisions, and struggles with mental functioning. *Id.* In other words, Plaintiff claims that she is physically unable to perform light work because of her mental impairments. Plaintiff says she cannot occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id.* at 6. In support of this argument, she says that her doctor in Wichita Falls stated in medical records that she is unable to do this. *Id.* She attributes this physical inability to her lumbar stenosis. *Id.*

The Commissioner responds by arguing that the ALJ considered medical and non-medical evidence in making his RFC determination. Dkt. No. 25 at 9–10. The Commissioner states that, regarding Plaintiff's physical limitations, the ALJ considered medical testimony and acknowledged "that Plaintiff had significantly decreased range of motion of the lumbar spine." *Id.* at 8. With regard to the medical testimony in the record, the Commissioner points out that "[t]he evidence of record does not contain any opinion that Plaintiff had greater functional limitations, beyond the limitations the ALJ specified in his RFC finding." *Id.* at 8–9. According to the Commissioner, "[t]he ALJ considered Plaintiff's ability to perform daily activities," and "[t]he ALJ considered Plaintiff's work history, including her part-time work during the period at issue." *Id.* at 9. For these reasons, the Commissioner states that substantial evidence supported the ALJ's decision. *Id.* at 9–10. The undersigned agrees.

The ALJ supports his RFC regarding Plaintiff's physical limitations with findings from Plaintiff's physical examinations and the testimony of medical experts. For example, the ALJ states that a physical examination of Plaintiff revealed "a supple neck with a normal size thyroid without tenderness, no cervical lymphadenopathy, neck masses or tracheal deviation." Tr. at 25. Regarding Plaintiff's back issues, "[p]hysical examination showed . . . normal posture, no tenderness to palpation, intact sensation, intact motor strength, normal muscle bulk and tone, normal reflexes, normal range of motion, self-maintained balance, and a normal gait without ataxia." Tr. at 25. Additionally, Plaintiff was prescribed medication for her back issues. Tr. at 25. A physical examination also revealed mostly normal motor strength, reflexes, coordination, and response to sensations. Tr. at 26. And the ALJ states that he considered Plaintiff's abnormal findings and the impact of her obesity in making his RFC determination. Tr. at 25.

The ALJ also discusses the state agency consultants review of Plaintiff's physical limitations—and finds that Plaintiff's limitations were more restrictive than what some consultants found. Tr. at 27–28. The ALJ reduced Dr. Shabana's exertional level after considering Plaintiff's obesity, fatigue, and thyroid disorder, and concluded that Plaintiff could never climb ladders, ropes, and scaffolds and could only crouch occasionally. Tr. at 28. The ALJ also found that Dr. Kelly Wilson's opinion "supported . . . [Plaintiff's] reduction to a light exertional level." Tr. at 29.

Plaintiff argues that she cannot perform light work because of her mental impairments, but as discussed in detail below, the ALJ considered Plaintiff's mental impairments in determining Plaintiff's overall RFC. Tr. at 28–29. And the ALJ determined

that the physical evidence and medical testimony pertaining to Plaintiff's physical limitations supported the conclusion that she can perform light work. Tr. at 25–29. Plaintiff's claim that she has been told by a doctor at an unidentified point in time that she cannot perform the occasional climbing, stooping, and crawling, is not relevant to a review of the ALJ's determination, because it does not appear that this opinion was ever a part of the ALJ's record.[3] The medical opinions regarding Plaintiff's physical capabilities that were a part of the record supported the ALJ's restrictions which provided for more limitations than the experts' opinions. *See* Tr. at 27–29.

Although Plaintiff continues to reiterate that she is in constant pain and unable to perform even basic activities, her testimony expressing these difficulties was discussed and considered by the ALJ. He states in his opinion that:

> The claimant complained of overall pain, which is not entirely consistent with her thyroid condition or back pain. She reported lifting hurts her all over and indicated she could walk thirty to forty five minutes at a time and stand for an hour before experiencing pain. However, her complaints of walking and standing limitations are not supported by physical examinations. While she would be expected to experience some fatigue due to her thyroid condition and some limitation related to the combined effect of her back pain and her increasing obesity, physical examinations also showed she continued to exhibit a normal gait with normal motor strength. She did exhibit significant decreased range of motion of her back at a consultative examination. However, her reported ability to continue to perform her daily activities and continued work part-time suggest the capability of performing a range of work at a light exertional level.

---

[3] To the extent that Plaintiff argues that since her Administrative Hearing she has received additional diagnoses or that she has received further documentation supporting how severe her conditions are, the Court cannot consider information that was not before the ALJ in its analysis. *See* 42 U.S.C. § 405(g). And Plaintiff claimed in her Questionnaire that "social security has all my proof from medical records." Dkt. No. 8 at 4. Thus, it does not appear that Plaintiff makes a claim that the record was underdeveloped. If Plaintiff wishes to bring forth further documentation about new conditions or has new support for her existing conditions, she can file a new application with the Social Security Administration.

Tr. at 26–27. None of Plaintiff's arguments show that the ALJ failed to support his physical limitations with substantial evidence.

Although Plaintiff believes that her limitations are more restrictive than what the ALJ ultimately found, "Plaintiff's 'burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision.'" *Leslie H. v. Kijakazi*, No. 3:21-CV-00953-E-BT, 2022 WL 4370454, at *4 (N.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, No. 3:21-CV-00953-E-BT, 2022 WL 4370445 (N.D. Tex. Sept. 21, 2022) (quoting *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021)). The ALJ determines the weight to give each piece of evidence, and the Court may not "substitute . . . [its] judgment for the ALJ's." *Whitehead v. Colvin*, 820 F.3d 776, 782 (5th Cir. 2016). The ALJ supported the physical limitations set out in the RFC with substantial evidence.

2. *Mental Limitations*

Regarding Plaintiff's mental limitations, the ALJ found that Plaintiff can understand, remember, and carry out simple and routine instructions and tasks. Tr. at 29. Additionally, the ALJ found that Plaintiff can occasionally adapt to changes in the work setting or work processes, and occasionally interact with coworkers and supervisors. Tr. at 29.

Plaintiff argues that she cannot understand, remember and carry out simple and routine instructions and tasks because her "high school transcript shows [she] can't comprehend things." Dkt. No. 24 at 6. Plaintiff states that she struggles with remembering things like names, must ask others to explain things to her because of her dyslexia, and is

unable to comprehend what she reads. *Id.* According to Plaintiff, she cannot occasionally adapt to changes in the work setting or work processes because she ignores "what they want done & keep[s] doing what [she] was taught." *Id.* at 7. She says she must continue asking for help, and it takes her "a lot longer than anyone else to pick up changes and processes." *Id.* Lastly, Plaintiff says she cannot occasionally interact with coworkers and supervisors. *Id.* Plaintiff argues that "supervisors eventually turn against [her] because . . . [she has to] repeatedly go[] to them for assistance with the job duties," and she does not get along with her co workers and ends up having "to switch shifts due to these issues." *Id.*

The Commissioner responds by stating that the ALJ considered Plaintiff's mental health treatment, including her in-patient hospitalization, and Plaintiff's prescribed medications for her mental impairments in making his mental RFC determination. Dkt. 25 at 8. The Commissioner also states that "[t]he ALJ considered the evidence of record, including Plaintiff's progress notes and mental status examination findings." *Id.*

The ALJ supported Plaintiff's mental limitations with the testimony of medical experts, treatment Plaintiff has received, and Plaintiff's own testimony. Tr. at 28. The State Agency consultants who assessed Plaintiff's mental functional capacity found her capable of "retaining the capacity to understand, remember, and carryout detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting." Tr. at 28. However, the ALJ found that because of Plaintiff's own testimony at the hearing including her "continued reports of panic attacks," she was capable of carrying out only simple and

routine instructions, could handle only occasional changes in the work setting, and could interact only occasionally with coworkers and supervisors. Tr. at 28.

The ALJ discussed that Plaintiff received "an in-patient hospitalization for mental health treatment" in 2018 that was "followed by biweekly counseling," and Plaintiff responded well to medication—despite her decision to stop taking it due to weight gain. Tr. at 27. Since her in-patient treatment, Plaintiff "has not received escalating treatment modalities . . . suggesting that . . . [her] symptoms are not as severe as alleged or that the conservative treatment she received since her hospitalization has been relatively effective at controlling her symptoms." Tr. at 27.

Similar to the discussion on Plaintiff's physical impairments, the ALJ considered Plaintiff's statements regarding her mental limitations but found that "the intensity, persistence and limiting effects" that Plaintiff alleges "are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 24, 26. For example, despite Plaintiff's claims about her learning disabilities, her "Mental status examinations . . . showed she exhibited intact memory, an appropriate fund of knowledge, normal thought processes, average intellectual functioning, and normal attention, and normal concentration . . . ." Tr. at 23. The ALJ also pointed out that Plaintiff attended some college, obtained a certificate to work on computers, and was able to continue "work part-time as a cashier in an ice cream shop, and in home health care." Tr. at 21, 27.

Plaintiff's arguments amount only to a disagreement about the severity of her limitations, but she fails to discuss any limitation that was not supported by medical or non-medical evidence. And as stated in the discussion on Plaintiff's physical limitations, the

Court cannot reweigh the evidence or substitute the ALJ's judgment with its own. *See Whitehead*, 820 F.3d at 782. The ALJ supported the mental limitations set out in the RFC with substantial evidence.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the decision of the ALJ be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to United States District Judge James Wesley Hendrix.

## V. RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 15th day of May, 2023.

                                                          _____
                                                          JOHN R. PARKER
                                                          UNITED STATES MAGISTRATE JUDGE